32

## ORIGINAL

RECEIPT NUMBER
509485

RECEIPT NUMBER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JURY TRIAL DEMANDED**

**K&R INDUSTRIES, INC.,**
    a Michigan corporation,

        Plaintiff,

    v.

**ONTEL PRODUCTS**
    **CORPORATION,** a New Jersey
    corporation, **ASHOK KHUBANI,**
    an individual who resides in New
    Jersey, and **DOEs 1-99,**
    **INCLUSIVE,** corporate,
    partnership, LLC, and/or other
    business entities from various
    jurisdictions, whose identities are
    to be determined,

        Defendants.

```
JUDGE : Feikens, John
DECK  : S. Division Civil Deck
DATE  : 06/21/2004 @ 16:34:34
CASE NUMBER : 2:04CV72297
CMP KR IND INC V. ONTEL PRODUCTS
CORP ET AL (DA)
```

Hon. _____
United States District Judge

MAGISTRATE JUDGE SCHEER
Hon. _____
United States Magistrate Judge

## COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, COUNTERFEITING, AND UNFAIR COMPETITION

1.    This is a trademark infringement and trade dress infringement lawsuit.

2.    Although the product at issue in this case is novel and unique (the GlassMaster® is an articulated cleaning device for use on automobile windows and other polished and non-polished surfaces), the fact-pattern in this lawsuit is hardly unique or

1    unusual.  See, e.g., X-It Products Corp. v. Walter Kidde Portable Equip., 227 F. Supp.2d

2    494, 546, 549 (E.D.Va. 2002); Carlye Adler, *SPECIAL FEATURE: Can you spot the*

3    *knockoff?  If you're a designer, big retailers want your ideas.  They just don't want to pay*

4    *for them.*, FORTUNE SMALL BUSINESS (Mar. 12, 2002), Tab A.

5                    **SUBJECT-MATTER JURISDICTION**

6           3.      This honorable Court has subject-matter jurisdiction under 28 U.S.C. § 1331

7    (federal question), and 28 U.S.C. § 1338(a), (b),[1] because several causes of action asserted

8    by the Plaintiff arise under the Constitution or Laws of the United States, namely: (1) False

9    Designation of Origin, in violation of Lanham Trademark Act, 15 U.S.C. § 1125(a); (2)

10   Trademark Infringement in Violation of the Lanham Trademark Act, 15 U.S.C. §§

11   1114(1)(a), 1125(a); (3) Counterfeiting, in violation of the Lanham Trademark Act, 15

12   U.S.C § 1114(1)(b); (4) Trade Dress Infringement in violation of 15 U.S.C. § 1125(a), and

13   (5) Unfair Competition under section 1125(a).

14          4.      This honorable Court has supplemental jurisdiction over all state-law causes

15   of action under 28 U.S.C. § 1367(a) and/or 28 U.S.C. § 1338(b).

16   _____

17          [1](a)   The district courts shall have original jurisdiction of any civil action arising
     under any Act of Congress relating to patents, plant variety protection, copyrights and
18   trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant
     variety protection and copyright cases.

19
            (b)     The district courts shall have original jurisdiction of any civil action
20   asserting a claim of unfair competition when joined with a substantial and related claim
     under the copyright, patent, plant variety protection or trademark laws. . . .

21
            28 U.S.C. § 1338.

1    5.    Insofar as claims against Defendants Ontel Products Corporation and Ashok

2    Khubani are concerned, this honorable Court also has subject-matter jurisdiction under 28

3    U.S.C. § 1332(a)(1), (c)(1) (diversity of jurisdiction), because the Plaintiff (in Michigan) and

4    Defendants Ontel Products Corporation (New Jersey) and Ashok Khubani (New Jersey)

5    reside in different States (complete diversity exists) and the matter in controversy exceeds

6    the value of $75,000.00, exclusive of interest and costs. However, one or more of DOEs 1-

7    99, INCLUSIVE, are potentially believed to be incorporated and/or to have their principal

8    places of business in Michigan.

9    **PERSONAL JURISDICTION**

10    6.    On information and belief, this honorable Court has general personal

11    jurisdiction, for purposes of the Due Process Clauses of the Fifth and Fourteenth

12    Amendments, over Defendant Ontel Products Corporation, because Ontel has purposefully

13    availed itself in a continuous and systematic manner of the State of Michigan, the benefits

14    of doing business in Michigan, and the benefits and protections of Michigan law, by

15    transacting business in a continuous and systematic manner (including a substantial volume

16    of business with Troy, Michigan-based K-Mart Corporation, and Grand Rapids-based Meijer

17    Corporation, among other Michigan businesses), for many years. See, e.g., Burger King

18    Corp. v. Rudzeweicz, 471 U.S. 462 (1985).

19    7.    Specific personal jurisdiction also exists over Ontel Products Corporation.

20    8.    General and specific personal jurisdiction exists over Defendant Khubani.

21    9.    General and specific jurisdiction over DOEs 1-99 will be determined in the

1   normal course of discovery, once the identity of these defendants is determined.

2          10.    This honorable Court also has jurisdiction under the Michigan Long-Arm

3   statute, MCL §§ 600.701 - 600.715, over the person of Ontel Products Corporation and over

4   Khubani. E.g., Neogen Corp. v. Neo Gen Screening, 109 F. Supp. 2d 724, 727-28 (W.D.

5   Mich. 2000), *rev'd on other grounds*, 282 F.3d 883 (6th Cir. Mar. 6, 2002); Ford Motor Co.

6   v. Great Domains, Inc., 141 F. Supp. 2d 763, 771 (E.D. Mi. 2001) (citing Neogen).

7          11.    Long-arm jurisdiction over DOEs 1-99 will be determined in the normal

8   course of fact discovery.

9          12.    Defendant Ontel Products Corporation, has already submitted to Michigan

10  personal jurisdiction, in Smith v. Ontel Prods. Co., Civil Action No. 04-CV-70417-JCO-

11  SDP (E.D Mi. *filed* Feb. 4, 2004), by filing an Answer, without raising any defense of lack

12  of personal jurisdiction.

13                                    **PARTIES**

14         13.    Plaintiff K&R Industries, Inc., is a Michigan corporation, headquartered in

15  Wayne County, Michigan.

16         14.    Defendant Ontel Products Corporation, on information and belief, is a New

17  Jersey corporation, headquartered in Fairfield, New Jersey.

18         15.    Defendant Khubani is an individual who resides in the State of New Jersey,

19  who is personally and directly involved in all aspects of the business of Defendant Ontel,

20  and, on information and belief, even resides at the same address as Ontel's headquarters.

21  On information and belief, Ontel is an *alter ego* of Khubani.

16.     Defendants DOEs 1-99, INCLUSIVE, are merchants and retailers throughout the United States (excluding those who, on account of obtaining proper trademark licensing or authorization from Plaintiff, or who Plaintiff has for other reasons voluntarily elected not to sue), who are also subject to suit for the strict-liability torts of trademark and trade dress infringement, as well as for unfair competition and other causes of action – because they have, without Plaintiff's authorization, offered and sold in commerce products (products made and distributed by Defendant Ontel) that infringe Plaintiff's registered trademark GlassMaster®, and which products also infringe the trade dress of Plaintiff's GlassMaster® product and packaging.  The products offered and sold in commerce, without Plaintiff's authorization, by DOEs 1-99, INCLUSIVE, are likely to cause mistake, or to cause confusion, or to deceive as to the affiliation, connection, or association of each such DOE 1-99, INCLUSIVE with Plaintiff, or as to the origin, sponsorship, or approval by Plaintiff of the goods, services, or commercial activities of DOEs 1-99, Inclusive.  Some of DOEs 1-99, INCLUSIVE, may also be corporate affiliates of Defendant Ontel Products Corporation, that are actively involved in the distribution of infringing merchandise, and the active infringement of Plaintiff's GlassMaster® trademark, and Plaintiff's trade dress.

## [INTENTIONALLY LEFT BLANK]

### PLAINTIFF'S INTELLECTUAL PROPERTY

17.     Plaintiff manufactures and sells in commerce a patented device[2] that assists in the cleaning of glass and other surfaces.  The product looks like this:



Plaintiff's cleaning product has been sold for several years under the trademark GlassMaster®.  Plaintiff's GlassMaster® product has been advertised on television in many major media markets.  The trademark for the product has become widely-recognized by customers, nationwide, and has become exclusively and firmly associated with a single source of high-quality products.

18.     Plaintiff is the exclusive owner of the federally-registered trademark GLASSMASTER®, Reg. No. 2,466,153, for goods of the following description: "Window cleaning kits, comprised of a handle, paddles interchangeably connected to the handle and an elastic trimmed cloth cleaning towel."  Plaintiff's trademark registration, in force since

---

[2]Plaintiff reserves the right to amend this Complaint (or to file a second Complaint in a court of competent jurisdiction), to allege the infringement of one or more patents..

1  July 3, 2001, presumptively establishes Plaintiff's exclusive, nationwide, ownership of the

2  mark.[3]

3      19.    At all times since November 28, 2000, Plaintiff has actively and consistently

4  used the GlassMaster® trademark, in interstate commerce, on and in connection with its

5  cleaning product.  The GlassMaster® mark has consistently been used on and affixed to all

6  product packaging of the Plaintiff's cleaning device.

7      20.    Separate and apart from the patented and functional aspects of the

8  GlassMaster® (of course, specific aspects of the product that are functional and that are

9  covered by one or more utility patents, cannot support a trade dress claim),[4] the

10  GlassMaster® product and its packaging have several distinctive design characteristics that

11  serve as trade dress,[5] and that serve a source-identifying function similar to a trademark (the

12  distinctive shape of a Coca-Cola bottle is the classic illustration of trade dress):

13

---

14      [3]"Any registration . . . of a mark registered on the principal register provided by
this chapter and owned by a party to an action shall be admissible in evidence and shall

15  be prima facie evidence of the validity of the registered mark and of the registration of
the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right

16  to use the registered mark in commerce on or in connection with the goods or services
specified in the registration subject to any conditions or limitations stated therein . . . ."

17

18      15 U.S.C. § 1115(a); see also 15 U.S.C. § 1057(b), (c).

    [4]Traffix Devices, Inc. v. Marketing Devices, Inc., 532 U.S. 23, 30-32 (2003).

19

20      [5]Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992) (explaining basis for
protecting trade dress under Lanham Trademark Act); see also id., at 775 (pointing out
special significance of protecting trade dress of small, start-up companies, against

21  appropriation of trade dress by larger competitors who may otherwise be inclined to
flood the market with knock-offs).

a.     The distinctive, recognizable, and decorative shape of the GLASSMASTER® paddle (paddles can be made in many different shapes, with no decrease in basic functionality):



b.     The distinctive and decorative bend in the handle, between the hand-grip, and the paddle-attachment assembly (the device would be just as functional with a straight handle, but would not be as aesthetically distinctive);

c.     The distinctive curvature of the profile of the paddle (the paddle is more distinctive because it is not flat);

d.     The font and color in which the GlassMaster® trademark is displayed on the product packaging;

1      e.    Product packaging that prominently features an "As Seen on TV" logo (the

2            Plaintiff's product has been featured in television advertising in media

3            markets all across the country);

4      f.    Product packaging that features a large picture of a man using the product to

5            clean the front window of his automobile;[6]

6      g.    The color of the product packaging;

7      h.    The general design and layout of the product packaging.

8  Collectively, these elements generate a unique and distinctive product presentation and trade

9  dress, that serves a source-identifying function to customers.

10      21.    Plaintiff's GLASSMASTER® trademark, because of a trademark registration,

11  is presumptively distinctive and strong.

12      22.    Plaintiff's GLASSMASTER® mark, beyond any presumptions, is inherently

13  distinctive and strong as a trademark.

14      23.    Plaintiff's GLASSMASTER® mark, through six years of advertisement and

15  promotion in markets all over the country, has been strengthened and has acquired additional

16  secondary meaning in the minds of customers and potential customers, and serves an

17  unmistakable source-identifying function to customers.

18      24.    Plaintiff's trade dress is also distinctive of this product (and of Plaintiff's

19

_____

20    [6]See, e.g., X-It Prods. v. Walter Kidde Portable Equip., 155 F. Supp. 2d 577, 617-24 (E.D. Va. 2001) (addressing very similar trade dress claim based on packaging design), *subsequent proceeding*, 227 F. Supp. 2d 494 (E.D. Va. 2002), *appeal dismissed due to settlement*.

21

1   identity as the unique source and origin of the product).  This trade dress signifies that a

2   product with the same or closely similar trade dress, comes from a single, unique, source

3   (namely, the maker of the Plaintiff's product) – even if customers do not know the name or

4   identity of the source.

5         25.    Plaintiff's trade dress is inherently distinctive.

6         26.    Plaintiff's trade dress – through six years of advertisement and promotion in

7   markets all over the country – has been strengthened and has acquired additional secondary

8   meaning in the minds of customers and potential customers, thereby serving an unmistakable

9   source-identifying function to customers.

10        27.    Plaintiff has invested considerable amounts advertising and promoting the

11  GlassMaster® trademark, and the product's unique trade dress.  In the course of this

12  advertising and promotion, the trademark and trade dress have become strongly associated

13  in the minds of the purchasing public with the Plaintiff's window-cleaning system.

14  **ONTEL PRODUCTS CORPORATION**

15        28.    Ontel Products Corporation has a well-known and somewhat notorious

16  litigation history, arising out of its sales of products (and product packaging) that closely

17  imitate the original products and product ideas of others (generally, the original ideas of

18  start-up companies who are promoting their products on television).  For instance (this is

19  only a sample, not a complete history of all of Ontel's litigation), Ontel has been sued in

20  these cases:

21      •     Hatchett v. Ontel Prods. Corp., No. 96-CV-3433 (S.D. Fl. *filed* Nov. 27,

1    1996) (Ontel sued for patent infringement); <u>Hatchett v. Ontel Prods. Corp.</u>,

2    No. 97-CV-63 (N.D. Miss. *filed* Apr. 22, 1997) (same).

3  • <u>Computer Business Works v. Ontel Prods. Corp.</u>, No. 2:04-CV-03551-MMM-

4    RNB (C.D. Cal. *filed* May 20, 2004) (in copyright follow-on to trademark

5    lawsuit in California state court,[7] Ontel is directed to show cause why it

6    should not be enjoined from infringing copyright for inkjet refill instructions);

7  • <u>Trade Assocs., Inc. v. Ontel Prods. Corp.</u>, 2:01-CV-01724-BJR (W.D. Wa.

8    *filed* Oct. 24, 2001) (Ontel sued for infringing "AIR FORCE" trademark on

9    or in connection with household tools);

10  • <u>Ensar Corp. v. Ontel Prods. Corp.</u>, No. 2:96-CV-04285-JAG (D. N.J. *filed*

11    Sept. 11, 1996) (Ontel sued for patent infringement and permanently enjoined

12    from infringing patent);

13  • <u>E. Mishan & Sons v. Ontel Prods. Corp.</u>, C.A. No. 1:00-CV-04161-LLS

14    (S.D.N.Y. *filed* June 5, 2000) (Ontel sued for trademark infringement);

15  • <u>Ferris Marketing, Inc. v. Ontel Products Corp.</u>, C.A. No. 1:02-cv-11114-GAO

16    (D. Mass. *filed* June 3, 2002) (Ontel sued for copyright infringement);

17  • <u>DDS Marketing, Inc. v. Ontel Prods. Corp.</u>, 2:97-cv-00096-KSH (D. N.J. *filed*

18    Jan. 13, 1997) (Ontel sued for trademark infringement);

19  • <u>Ingenious Designs v. Khubani, et al.</u> C.A. No. 0:97-CV-00147-DRH

20

21    [7]Plaintiff's counsel in this case briefly represented Computer Business Works, in
connection with covering one deposition in Grand Rapids, Michigan, as part of the
California state-court lawsuit.

1    (E.D.N.Y. *filed* Jan. 11, 1997) (Ontel sued for trademark infringement);

2    •   Welcome Co., Ltd. v. Telebrands Corp., *et al.*, C.A. No. 2:97-CV-09379-DT-

3        JG (C.D. Cal. *filed* Dec. 17, 1997) (Ontel sued for infringing patents);

4        Welcome Co., Ltd. v. Ontel Prods. Corp., C.A. No. 00-CV-8665 (C.D. Cal.

5        *filed* Aug. 15, 2000) (patent infringement);

6    •   Project Strategies Corp. v. Ontel Prods. Corp., C.A. No. 2:94-cv-05984-WGB

7        (D.N.J. *filed* Dec. 16, 1994) (trademark infringement); Ontel Prods. v. Project

8        Strategies, C.A. No. 1:94-CV-09025-HB (S.D.N.Y. *filed* Dec. 16, 1994).

9    29.    On information and belief, Ontel has represented to third-parties, and tried to

10   create the belief in others that it "owns," or has some kind of exclusive right to, the slogan

11   "as seen on television."  Ontel, to the contrary, is neither the only company to use this

12   designation, nor does it have any legally-enforceable right to exclude others from using it.

13   30.    Moreover, Ontel in the past marked some of its products with slogans and

14   logos such as "similar to products seen on television," to create the misleading impression

15   that Ontel's products (imitations of the products of small start-ups -- who advertised on

16   television) are or were the same ones that people saw in television advertising – when, in

17   fact, Ontel's products are and were not the same ones seen by customers on TV.

18   31.    More recently, because of legal problems with the strategy summarized in

19   Paragraphs 29 and 30, Ontel has taken to producing its own "infomercials" for knock-off

20   products (so that both the knock-off and the original product are both seen on television, but

21   at different times, in different commercials, produced by different companies), and then

1   using the "as seen on TV" logo to create the false impression that Ontel is the source or

2   origin of someone else's product that Ontel has knocked-off.

3        32.    From the various infringement lawsuits against Ontel, an evident pattern of

4   conduct emerges.   Ontel has an advantage over smaller start-up companies (which

5   companies generally have one product and must establish retail relationships from scratch)

6   because Ontel has for many years developed an extensive network of retail outlets, to which

7   it ships its wares. Because of this advantage from an installed base of retailers, Ontel is able

8   to put essentially any small first-mover out of business, by saturating the market with a

9   cheaper knock-off with reduced functionality – before moving on to the next product and

10  the next victim.

11       33.    Ontel learns of smaller competitors' good product ideas from television, and

12  then obtains a sample of any product(s) it wants to knock-off.  Ontel then makes minor,

13  cosmetic, changes to the product and to the product packaging – so that Ontel's version is

14  not identical (just confusingly similar) to the original product.

15       34.    Ontel then sends its re-designs overseas (generally, to mainland China), where

16  each such knock-off can be manufactured in huge quantities at very low cost.  Thus, at just

17  the time when the hard work of an entreprenurial American company – priming the market

18  to recognize and accept a new and useful product – is just about to pay off, Ontel jumps into

19  the market with inferior, imitation knock-off devices, and floods the market with them,

20  thereby profiting handsomely from the work and original ideas of others.

21       35.    The reason that Ontel sometimes gets away with it is essentially a numbers

1  game – not all instances of infringement are detected, and for many instances that are, by the

2  time the victim sees what is coming, it is often too late.

3        36.      Moreover, even when the victim of infringement has the opportunity to do

4  something about it, a significant percentage elect not to sue.   As explained succinctly in

5  Carlye Adler, *SPECIAL FEATURE: Can you spot the knockoff?  If you're a designer, big*

6  *retailers want your ideas. They just don't want to pay for them.*, FORTUNE SMALL BUSINESS

7  (Mar. 12, 2002), Tab A:

8          Taking on a big company can be expensive, though. In intellectual-property

9          lawsuits in which less than $1 million is at stake, attorneys' fees and costs

10         average $400,000, according to Penta Advisory Services in Washington, D.C.,

11         a consulting company. When $1 million to $10 million is at stake, the fees

12         average $1 million. Most small businesses can't afford that, especially when

13         the outcome is so uncertain. Aldo DiBelardino, co-founder and director of

14         X-IT, had to remortgage his house and dip into his retirement savings to cover

15         his legal costs for the lawsuit against Kidde. And even though his company

16         won in court, he says some bills still remain unpaid, as X-IT hasn't yet

17         received the check for damages.

18  Thus, even if Ontel is required to disgorge all the profits from 1/3 of the products and

19  devices it knocks-off, Ontel still winds up making a handsome profit on all the infringement

20  that it gets away with -- unchallenged.

21        37.      Moreover, even in those cases in which victims of Ontel's knock-off scheme

1    elect to go to court, Ontel tends to use its financial resources and distribution advantages to

2    buy them off. For instance, in the <u>Computer Business Works</u> ("CBW") case in California,

3    Ontel shipped packages that infringed the "Universal" trademark, and the package trade

4    dress of CBW, for inkjet printer refill kits. CBW's trademark included an "ink drop" design

5    inside the U of the word Universal. Ontel – contending this was "merely descriptive" –

6    imitated the Universal mark and the ink drop – as well as other key aspects of CBW's

7    original trade dress. CBW sued. On information and belief, CBW learned in discovery that

8    Ontel's telephone marketers were calling retailers (like Meijer, K-Mart, and Wal-Mart), and

9    trying to pretend that they were from CBW (or trying to leave purchasing agents with an

10   ambiguous impression) in order to get the Ontel products into stores. After CBW sued,

11   Ontel elected to join forces with CBW, and Ontel therefore started distributing the genuine

12   CBW product (instead of Ontel's knock-off) through Ontel's retail channels.

13        38.    At last word, the issue of a remedy for the period of infringement, in the CBW

14   case, has been referred to arbitration.

15        39.    In other cases, Ontel will pay off those who sue it by offering an amount of

16   money to make the infringement lawsuit go away, but not enough to fully compensate the

17   settling party for all the lost business and harm the infringement has caused. Even after

18   paying off the percentage of victims who sue, Ontel is left with enormous profits and a big

19   enough war-chest to threaten anyone who does not take their deal, that the alternative will

20   be unpleasant and costly.

21        40.    The end result of Ontel's business practices is significant harm to small

Page -15-

1  manufacturers – and their workers – in the United States and Canada, as well as significant

2  financial harm to creative persons, inventors, and designers in the United States.

3      41.  The beneficiaries appear to be the owners of Ontel, and the owners of the

4  Chinese factories in which Ontel's knock-offs are made by low-wage workers who have no

5  rights to organize, no health benefits, and little of the protections that would result were

6  China to adopt adequate regulations to govern workplace safety, hours, and other conditions.

7  **ONTEL'S INFRINGEMENT**

8      42.  In this instance, Ontel has started flooding the market with a product called the

9  Glass Wizard, which it has started advertising on television and is shipping to many retailers

10  in various locations:

11



21      43.  The Ontel Glass Wizard directly copies and infringes each and all of the

1    specific non-patented aspects of the GlassMaster® trade dress alleged in Paragraph 20,

2    *supra*.  The Glass Wizard is not protected by any patent or by any trademark registration

3    with the U.S. Patent & Trademark Office.

4         44.    It is probably understandable why Ontel has not sought to register "Glass

5    Wizard" as a trademark for this product – because Ontel is already on statutory notice that

6    Plaintiff has exclusive, nationwide, right to the trademark GlassMaster®, which means that

7    anybody who uses a mark so similar as to be *likely* to deceive, or to cause mistake, or to

8    cause confusion, cannot obtain a registration (such as for the mark "Glass Wizard").

9         45.    "Glass Wizard" is, in fact, confusingly similar to Plaintiff's GlassMaster®

10    trademark, under the eight-factor test established for "likelihood of confusion," in trademark

11    cases, in the Sixth Circuit.  See Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville,

12    670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 US 916 (1982).

13         46.    Strength of Senior Mark: GlassMaster® is a strong mark, both because of

14                inherent distinctiveness, and due to additional acquired distinctiveness and

15                secondary meaning resulting from several years of promotion, and widespread

16                advertisement in nationwide commerce.

17         47.    Relatedness of the Goods or Services: The GlassMaster® and the Glass

18                Wizard are directly competitive products, that do the same thing, that Ontel

19                has intentionally caused to look alike, and that are sold to the same customers.

20         48.    Similarity of the Marks: Under the traditional "sight, sound, and meaning"

21

1    test,[8] the marks are indistinguishable and are highly likely to cause confusion

2    when singly presented.  Both are pronounced with the same rhythm, have the

3    same number of syllables, and the same number of letters.  Both marks look

4    alike, and both begin with the word "Glass."  The remainder of each mark is

5    a term – "Master" or "Wizard" – that conveys masculine dominance over a

6    task, masculine power, and superior skill at accomplishing a task.  In short, the

7    marks are identical for all practical purposes.

8    49.    Evidence of Actual Confusion: Since the introduction of the knock-off Glass

9    Wizard product, significant numbers of confused persons (both retailers who

10    purchase large numbers of units, and end-users) have come to light.

11    50.    Marketing Channels Used: These products are marketed and sold through

12    essentially the same channels – both direct sales through television

13    advertising, and retail sales to end-users in stores carrying both general and

14    specialty merchandise.

15    51.    Likely Degree of Purchaser Care and Sophistication: These are not

16    complicated technical devices, or customized goods -- and, therefore,

17    purchasers are unlikely to exercise much care to make sure that the cleaning

18    wand they purchase is the same GlassMaster® product that they actually

19    wanted to purchase after they saw GlassMaster® on television.

20

21    [8]Wynn Oil Co. v. Thomas, 839 F.2d 1183, 1188 (6th Cir. 1988) (citing James
Burrough Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 275 (7th Cir. 1976)).

52.   <u>Intent of the Defendant in Selecting the Mark</u>: Active copying of the mark – which is evident in this instance (OnTel could have used a much different trade dress and a non-confusing trademark such as "Auto Shine," but OnTel didn't) – creates a presumption that the infringer intended to cause the public to confuse the competing products;

53.   <u>Likelihood of Expansion of the Product Lines</u>: Since the products already directly overlap, they cannot possibly come any closer in the future, through expansion of product lines.

54.   Moreover, the Glass Wizard is an inferior product because the pivot mechanism of the Glass Wizard does not allow paddles to be interchanged with the same ease as paddles can be interchanged on a genuine GlassMaster® cleaning wand.

55.   Interchanging paddles for an Ontel Glass Wizard (say, if one saturates the first paddle with a solvent and then needs a "dry" paddle) is much more difficult and potentially hazardous to customers with the Glass Wizard, than with the GlassMaster®'s patented paddle-change, and pivot device.

56.   The Glass Wizard is not consistent with the quality standards that the public has come to associate and expect from genuine GlassMaster® products.

57.   The same eight-factor test applies to trade dress infringement, as to trademark infringement, and under the same test, Ontel is equally guilty of trade dress infringement, as a matter of law.

58.   Under the analysis set forth in <u>PACCAR, Inc. v. Telescan Techs.</u>, 319 F.3d

1   243 (6th Cir. 2003) ("First, if the parties compete directly by offering their goods or services,

2   confusion is likely if the marks are sufficiently similar; second, if the goods or services are

3   somewhat related but not competitive, the likelihood of confusion will turn on other factors;

4   third, if the goods or services are totally unrelated, confusion is unlikely."), a *likelihood* of

5   confusion, and trademark infringement, are established as a matter of law.

6   ## COUNT ONE – FALSE DESIGNATION OF ORIGIN

7   59.   Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-58 as

8   though set forth verbatim herein.

9   60.   Plaintiff is the exclusive worldwide owner of the federally-registered

10  GlassMaster® trademark and brand name.

11  61.   The mark is distinctive and/or has acquired secondary meaning as an

12  identification that products (pivot-head surface-cleaning wands, in particular) come from the

13  Plaintiff.

14  62.   Quite recently, Defendants (including Defendant Ontel), have been using a

15  confusingly similar trademark on a directly-competing but inferior product, and causing

16  actual confusion in the marketplace, even though none of the Defendants-Infringers is the

17  source of genuine GlassMaster® cleaning wands, and none of them has ever been properly

18  authorized or licensed by the Plaintiff to do so.

19  63.   In so doing, in connection with the sale of goods or services in commerce,

20  Defendants-Infringers (or one or more or all of them), has falsely used in commerce (and

21  published falsely to customers) one or more words, terms, symbols, names or devices, and/or

1    one or more combination(s) thereof, and/or one or more false designation(s) of origin, and/or

2    a false or misleading description of fact, and/or misleading representation of fact.

3        64.    Defendants'-Infringers' use in commerce (and publication falsely to

4    customers) of words, terms, symbols, names or devices, and/or one or more combination(s)

5    thereof, and/or one or more false designation(s) of origin, and/or one or more false or

6    misleading description(s) of fact, and/or misleading representation(s) of fact are likely to

7    cause confusion, or to cause mistake, or to deceive as to the affiliation, or connection, or

8    association of Defendants-Infringers (or one or more or all of them) as to the origin,

9    sponsorship, or approval of the Plaintiff.

10        65.    Defendants-Infringers (or one or more or all of them – **especially Ontel**) have

11    willfully engaged in the falsification of designations of origin and/or representations or

12    descriptions of fact concerning such goods and/or services.

13        66.    Plaintiff, and the goodwill associated with Plaintiff's mark, has been materially

14    injured by the foregoing misconduct of the Defendants-Infringers.

**COUNT TWO – TRADEMARK INFRINGEMENT**
**IN VIOLATION OF 15 U.S.C. § 1114**

17        67.    Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-66 as
    though set forth verbatim herein.

18        68    Plaintiff is the exclusive worldwide owner of the federally-registered
19    GlassMaster® trademark and brand name.

20        69.    The mark is (presumptively and actually) distinctive and/or has acquired

1  secondary meaning as an identification that products (pivot-head surface-cleaning wands,

2  in particular) come from the Plaintiff.

3      70.    Quite recently, Defendants (including Defendant Ontel), have unlawfully been

4  using in commerce a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's

5  registered mark -- on or in connection with the sale, offering for sale, distribution, or

6  advertising of Defendants goods or services.

7      71.    Defendants' use of said reproduction, counterfeit, copy, or colorable imitation

8  of Plaintiff's registered mark -- on or in connection with Defendants' goods -- is (due to the

9  nature of such gioods) highly likely to cause confusion, or to cause mistake, or to deceive,

10  and therefore violates 15 U.S.C. section 1114(1)(a), of the Lanham Trademark Act.

11      72.    Defendants' violation of Plaintiff's registered trademark, specifically, involves

12  a directly-competing but inferior product.

13      73.    Defendants' infringement of the registered trademark is causing actual

14  confusion in the marketplace.

15      74.    None of the Defendants-Infringers is the source of genuine GlassMaster®

16  cleaning wands, and none of them has ever been properly authorized or licensed by the

17  Plaintiff to do so.

18      75.    Defendants-Infringers (or one or more or all of them – **especially Ontel**) have

19  willfully engaged in the falsification of designations of origin and/or representations or

20  descriptions of fact concerning such goods and/or services.

21      76.    Plaintiff, and the goodwill associated with Plaintiff's mark, has been materially

Page -22-

1   injured by the foregoing misconduct of the Defendants-Infringers.

2   ### COUNT THREE -- TRADEMARK INFRINGEMENT
    ### IN VIOLATION OF 15 U.S.C. § 1125(a)

3

4   77.   Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-76 as

    though set forth verbatim herein.

5

6   78.   Plaintiff is the exclusive worldwide owner of the federally-registered

    GlassMaster® trademark and brand name.

7

8   79.   The mark is distinctive and/or has acquired secondary meaning as an

    identification that products (pivot-head surface-cleaning wands, in particular) come from the

9

    Plaintiff.

10

11  80.   Quite recently, Defendants (including Defendant Ontel), have been using a

    confusingly similar trademark on a directly-competing but inferior product, and causing

12

13  actual confusion in the marketplace, even though none of the Defendants-Infringers is the

    source of genuine GlassMaster® cleaning wands, and none of them has ever been properly

14

    authorized or licensed by the Plaintiff to do so.

15

16  81.   In so doing, in connection with the sale of goods or services in commerce,

    Defendants-Infringers (or one or more or all of them), has falsely used in commerce (and

17

    published falsely to customers) one or more words, terms, symbols, names or devices, and/or

18

    one or more combination(s) thereof, and/or one or more false designation(s) of origin, and/or

19

    a false or misleading description of fact, and/or misleading representation of fact.

20

21  82.   Defendants'-Infringers' use in commerce (and publication falsely to

1   customers) of words, terms, symbols, names or devices, and/or one or more combination(s)

2   thereof, and/or one or more false designation(s) of origin, and/or one or more false or

3   misleading description(s) of fact, and/or misleading representation(s) of fact are likely to

4   cause confusion, or to cause mistake, or to deceive as to the affiliation, or connection, or

5   association of Defendants-Infringers (or one or more or all of them) as to the origin,

6   sponsorship, or approval of the Plaintiff.

7       83.   The actions of Defendants-Infringers (or one or more or all of them), as set

8   forth above, infringe the trademark of the Plaintiff, and cause deception or mistake or

9   confusion of customers in the marketplace, in violation of 15 U.S.C. § 1125(a).

10       84.   The actions of Defendants-Infringers (or one or more or all of them), as set

11   forth above, are intentional and willful, and are calculated to cause deception or mistake or

12   confusion of customers in the marketplace.

13       85.   Defendants-Infringers have willfully infringed the Plaintiff's trademark.

14       **COUNT FOUR -- COUNTERFEITING**

15       86.   Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-85 as

16   though set forth verbatim herein.

17       87.   Plaintiff is the exclusive worldwide owner of the federally-registered

18   GlassMaster® trademark and brand name.

19       88.   The mark is distinctive and/or has acquired secondary meaning as an

20   identification that products (pivot-head surface-cleaning wands, in particular) come from the

21   Plaintiff.

1   89.   Quite recently, Defendants (including Defendant Ontel), have been using a

2   confusingly similar trademark on a directly-competing but inferior product, and causing

3   actual confusion in the marketplace, even though none of the Defendants-Infringers is the

4   source of genuine GlassMaster® cleaning wands, and none of them has ever been properly

5   authorized or licensed by the Plaintiff to do so.

6   90.   Defendants, in so doing, have reproduced, counterfeited, copied, or colorably

7   imitated Plaintiff's registered mark and applied such reproduction, counterfeit, copy, or

8   colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements

9   intended to be used (and actually used by Defendants) in commerce -- on, upon, or in

10   connection with the sale, offering for sale, distribution, or advertising of Defendant goods

11   or services.

12   91   Defendants' unauthorized and unlawful use of said reproduction, counterfeit,

13   copy, or colorable imitationon of Plaintiff's mark on, upon, or in connection with

14   Defendants' goods is likely to cause confusion, or to cause mistake, or to deceive.

15   92.   The actions of Defendants-Infringers (or one or more or all of them), as set

16   forth above, are intentional and willful, and are calculated to cause deception or mistake or

17   confusion of customers in the marketplace.

18   93.   Defendants-Infringers have willfully infringed the Plaintiff's trademark.

19   **COUNT FIVE – TRADE DRESS INFRINGEMENT**

20   94.   Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-93 as

21   though set forth verbatim herein.

Page -25-

1    95.    Plaintiff is the exclusive worldwide owner of the distinctive and original trade

2    dress of the GlassMaster® pivot-head surface-cleaning wand.

3    96.    The mark is distinctive and/or has acquired secondary meaning as an

4    identification that the products (pivot-head surface-cleaning wands) come from the Plaintiff.

5    97.    Quite recently, Defendants (including Defendant Ontel), have been using a

6    confusingly similar trade dress on and in connection with a directly-competing but inferior

7    product, and causing actual confusion in the marketplace, even though none of the

8    Defendants-Infringers is the source of genuine GlassMaster® cleaning wands, and none of

9    them has ever been authorized or properlicensed by Plaintiff to do so.

10    98.    In so doing, in connection with the sale of goods or services in commerce,

11    Defendants-Infringers (or one or more or all of them), has falsely used in commerce (and

12    published falsely to customers) one or more words, terms, symbols, names or devices, and/or

13    one or more combination(s) thereof (i.e., the knock-off trade dress) and/or one or more false

14    designation(s) of origin, and/or false or misleading descriptions of fact, and/or misleading

15    representations of fact.

16    99.    Defendants'-Infringers' use in commerce (and publication falsely to

17    customers) of the infringing trade dress is likely to cause confusion, or to cause mistake, or

18    to deceive as to the affiliation, or connection, or association of Defendants-Infringers (or one

19    or more or all of them) as to the origin, sponsorship, or approval of the Plaintiff.

20    100.    Defendants-Infringers (or one or more or all of them – **especially Ontel**) have

21    willfully engaged (through a misleading and deceptive trade dress) in the falsification of

Page -26-

1   designations of origin and/or representations or descriptions of fact concerning such goods

2   and/or services, and are liable for trade dress infringement.

3       101.   Plaintiff, and the goodwill associated with Plaintiff's mark, has been materially

4   injured by the foregoing misconduct of the Defendants-Infringers.

5                    **COUNT SIX – UNFAIR COMPETITION**

6       102.   Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-101

7   as though set forth verbatim herein.

8       103.   The actions of Defendants-Infringers, as set forth above, also constitute unfair

9   competition, which is separately actionable under federal trademark law.

10      104.   Defendants-Infringers have willfully engaged in unfair competition.

11             **COUNT SEVEN – UNFAIR COMPETITION (STATE LAW)**

12      105.   Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-104

13   as though set forth verbatim herein.

14      106.   The actions of Defendants-Infringers, as set forth above, also constitute

15   unfair competition, which is separately actionable under Michigan state law.

16      107.   Defendants-Infringers have willfully engaged in unfair competition.

17             **COUNT EIGHT – TRADEMARK INFRINGEMENT (STATE LAW)**

18      108.   Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-107

19   as though set forth verbatim herein.

20      109.   The actions of Defendants-Infringers, as set forth above, infringe the

21   trademark of the Plaintiff, and are calculated to cause deception or mistake or confusion

1    of customers in the marketplace, which is separately actionable under Michigan state law.

2    110.     Defendants-Infringers have willfully infringed the Plaintiff's trademark.

3    <u>**CONCLUSION AND PRAYER FOR RELIEF**</u>

4    Wherefore, based on the foregoing claims and causes of action, Plaintiff prays for

5    the following specific relief:

6    1.     That this honorable Court issue a preliminary injunction, prohibiting any

7    further infringement of Plaintiff's registered GlassMaster® trademark, or of Plaintiff's

8    distinctive trade dress, by any and all of the Defendants-Infringers, or by anyone in active

9    concert or participation with them, for the duration of the lawsuit.

10    2.     That this honorable Court issue a permanent injunction, permanently

11    prohibiting infringement of Plaintiff's registered GlassMaster® trademark, or of

12    Plaintiff's distinctive trade dress (or unfair competition, or false designation of origin,

13    using the Plaintiff's trademark or trade dress or coloroable imitation thereof) by the

14    Defendants-Infringers, or by anyone in active concert or participation with them.

15    3.     That the Defendants-Infringers be permanently enjoined from using in

16    commerce any device, name, word, symbol, or designation of origin (including, without

17    limitation, any Internet domain name) that is confusingly similar to Plaintiff's registered

18    GlassMaster® trademark, or of Plaintiff's distinctive trade dress, on or in connection

19    with any cleaning tools or devices.

20    4.     That the Defendants-Infringers be permanently be enjoined from taking any

21    action that is likely to infringe, or that is calculated or intended to infringe, or to result in

1  unfair competition with, the Plaintiff and/or Plaintiff's registered GlassMaster®

2  trademark, and/or Plaintiff's distinctive trade dress;

3      5.    That the Defendants-Infringers be required to make a full accounting of

4  revenues and profits to the Plaintiff.

5      6.    That the Defendants-Infringers be required to disgorge their profits – 15

6  U.S.C. § 1117(a)(1).

7      7.    That the Plaintiff recover the Plaintiff's actual damages from the

8  Defendants-Infringers – § 1117(a)(2), including a reasonable royalty (such as would have

9  been paid had a license been properly obtained);

10      8.    That Defendants-Infringers be required to pay the costs of the action.

11      9.    That Defendants-Infringers be required to pay statutory damages as set

12  forth in 15 U.S.C. § 1117.

13      10.    That the amount of the judgment for profits, damages and disgorgement be

14  trebled, as permitted in 15 U.S.C. § 1117(a), to assure full and complete compensation to

15  the Plaintiff.

16      11.    That Defendants-Infringers be held to pay the reasonable attorney's fees of

17  the prevailing Plaintiff.

18      12.    That Plaintiff be granted such other and further relief, whether in law,

19  equity, or otherwise, as to which Plaintiff may be justly entitled.

20

21

1

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**K&R INDUSTRIES, INC.,**

By counsel,

June 21, 2004

Eric C. Grimm (P58990)
Joseph A. Cruciani (P53922)
**CALLIGARO & MEYERING, P.C.**
20600 Eureka Road
Suite 900
Taylor, MI  48180
734.283.2727
Fax 734.246.8635

COUNSEL FOR PLAINTIFF.

JS 44 11/99   **CIVIL COVER SHEET** COUNTY IN WHICH THIS ACTION AROSE: _____

**04-72297**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**I. (a) PLAINTIFFS**

K&R Industries, Inc.

**DEFENDANTS**

Ontel Products Corp., et al.

**(b)** County of Residence of First Listed    Wayne    26163

County of Residence of First Listed    N/A

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(C)** Attorney's (Firm Name, Address, and Telephone Number)

Eric C. Grimm
20600 Eureka Road, Ste 900
Taylor, MI 48180  732.283.2727

Attorneys (If Known)

Not Known    JOHN FEIKENS s/scheer
72297

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PLA | DEF | | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — ☐ 310 Airplane; ☐ 315 Airplane Product Liability; ☐ 320 Assault Libel And Slander; ☐ 330 Federal Employers' Liability; ☐ 340 Marine; ☐ 345 Marine Product Liability; ☐ 350 Motor Vehicle; ☐ 355 Motor Vehicle Product Liability; ☐ 360 Other Personal Injury | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | **PERSONAL INJURY** — ☐ 362 Personal Injury- Med. Malpractice; ☐ 365 Personal Injury - Product Liability; ☐ 368 Asbestos Personal Injury Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | | ☐ 625 Drug Related Seizure of Property 21: 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of Overpayment and Enforcement of Judgment | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | **PERSONAL PROPERTY** — ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | ☐ 690 Other | ☒ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | | **LABOR** | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | | ☐ 710 Fair Labor Standards & Disclosure Act | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | **PRISONER PETITIONS** — ☐ 510 Motions to Vacate Sentence; Habeas Corpus: ☐ 530 General; ☐ 535 Death Penalty; ☐ 540 Mandamus & Other; ☐ 550 Civil Rights; ☐ 555 Prison Condition | | ☐ 871 IRS-Third Party 26 USC 7609 | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. 1114, 1125.  Defendants are infringing Plaintiff's GlassMaster(R) trademark, and the trade dress of Plaintiff's cleaning wand.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    $ DEMAND 10,000,000    CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE N/A    DOCKET NUMBER

DATE  6/21/2004    SIGNATURE OF ATTORNEY OF RECORD   _Eric_

## PURSUANT TO LOCAL RULE 83.11

1.　　　Is this a case that has been previously dismissed?

　☐ Yes
　☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.　　　Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other
court, including state court? (Companion cases are matters in which
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

　☐ Yes
　☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes : _____